# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

MEIGO BAILEY,

      Petitioner,

v.                                     Case No.   3:14-cv-583-J-32JBT

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

---

## O R D E R

Petitioner Meigo Bailey, an inmate of the Florida penal system, initiated this action by filing a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which he amended twice.  See Docs. 1, 3, 12 (Petition).  Bailey challenges his 2008 state court (Duval County, Florida) convictions for first degree felony murder, attempted second degree murder, armed burglary, and attempted armed robbery. Respondents have responded.  See Answer to Second Amended Petition for Writ of Habeas Corpus (Doc. 15) (Response).[1]  With the benefit of counsel, Bailey replied and attached an Unsworn Declaration of Carmen Lawrence.  See Petitioner's Reply Brief (Doc. 29) (Reply).  The Court directed the parties to file supplemental briefing on Grounds Eight, Nine, Ten, and Eleven of the Petition. See Doc. 30. Respondents filed

---

[1] Respondents also filed exhibits identified by letters.  See Doc. 15.  The Court refers to the exhibits as "Ex." followed by their identifying letter.

a Supplemental Answer. <u>See</u> Supplemental Answer to Second Amended Petition for Writ of Habeas Corpus (Doc. 37) (Supp. Response). Bailey, through counsel, filed a Supplemental Reply. <u>See</u> Petitioner's Sur-Reply Brief (Doc. 45) (Supp. Reply). This case is ripe for review.

## I.   <u>Procedural History</u>

Following a jury trial, Bailey was convicted of first-degree felony murder with a firearm committed during a robbery or attempted robbery (Count 1), attempted second-degree murder with a firearm (Count 3), burglary of a dwelling with a firearm (Count 4) and two counts of attempted robbery with a firearm (Counts 6 and 7). Resp. Ex. A at 268-75; B at 849-51.   After denying his motion for a new trial (Resp. Ex. A at 284-88; 507-10), the circuit court imposed concurrent sentences of life in prison on Count 1, thirty years on Count 3, life in prison on Count 4, fifteen years on Count 6, and fifteen years on Count 7.   <u>Id.</u> at 289-301; 507-524.

Bailey appealed his judgment and sentences to the First District Court of Appeal (First DCA).   Resp. Ex. C.   The State filed an answer brief (Resp. Ex. D), and Bailey filed a reply brief.   Resp. Ex. E.   The First DCA affirmed and issued a signed, written opinion.   Resp. Ex. F.   After granting the State's motion for clarification (Resp. Ex. G), the First DCA issued a substitute opinion.   Resp. Ex. H. The mandate issued.   Resp. Ex. I; <u>Bailey v. State</u>, 31 So. 3d 809 (Fla. 1st DCA 2009). Bailey sought discretionary review in the Florida Supreme Court.   Resp. Exs. J, K. The Florida Supreme Court declined to accept jurisdiction.   Resp. Ex. L; <u>Bailey v.</u>

<u>State</u>, 36 So. 3d 83 (Fla. 2010).   Bailey did not seek review by the United States Supreme Court.

Bailey filed a petition alleging ineffective assistance of appellate counsel in the First DCA.   Resp. Ex. M.   The First DCA denied the petition on the merits, issuing a per curiam order without written opinion.   Resp. Ex. N; <u>Bailey v. State</u>, 45 So. 3d 526 (Fla. 1st DCA 2010).

Bailey filed a motion for award of jail credit pursuant to Florida Rule of Criminal Procedure 3.800(a).   Resp. Ex. S at 1-3.   The trial court denied the motion. Resp. Ex. S at 67-103.   Bailey did not appeal.   <u>See</u> <u>id.</u> at 118-19.

Pursuant to Florida Rule of Criminal Procedure 3.850, Bailey filed an initial and amended motion to vacate his judgment and sentence.   He alleged five claims of ineffective assistance of counsel and one claim of fundamental trial court error. Resp. Ex. S at 4-19.   Without an evidentiary hearing, the circuit court denied the amended motion.   <u>Id.</u> at 20-66.   Bailey filed a motion for rehearing (<u>id.</u> at 104-08), which the circuit court denied.   <u>Id.</u> at 111-17.   Bailey filed a notice of appeal, but no brief.   <u>Id.</u> at 118-19.   The First DCA affirmed per curiam without a written opinion. Resp. Ex. T.   Bailey filed a motion for rehearing (Resp. Ex. U), which was denied. Resp. Ex. V.   The mandate issued.   Resp. Ex. W; <u>Bailey v. State</u>, 134 So.3d 453 (Fla. 1st DCA 2014).

## II.   <u>Evidentiary Hearing</u>

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's

factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## III. <u>Governing Legal Principals</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert. denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100

(2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102]

(citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if,

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

> among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can

---

4 <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539

U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).  To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance.   <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other."   <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."   <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.   As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong

presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see</u> <u>also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## IV. <u>Analysis</u>

### A. Grounds One and Two

In Ground One, Bailey asserts that his trial counsel was ineffective for failing to call Bailey's mother, Ms. Carmen Lawrence, as a witness. Petition at 3-5; Reply at 6-11. Bailey contends that his mother would have provided him an alibi by testifying that Bailey was at home with her and his sister on November 9, 2004, the night of the crimes. To support his claim, Bailey submits an Unsworn Declaration of Carmen Lawrence (<u>see</u> Doc. 29-1) in which his mother asserts, inter alia, that trial counsel was aware at trial that she was ready, willing and able to testify as an alibi witness. <u>Id.</u>

Also, in Ground One, Bailey asserts that his mother's testimony would have explained the unfavorable physical evidence (shoe imprints) and self-incriminating statements used against him at trial. Specifically, he contends that his mother was prepared to testify that the shoe imprints found at the November 9 crime scene could not be Bailey's because she did not purchase the subject shoes for Bailey until

November 14, 2004. Petition at 4; Reply at 6, 8. Furthermore, he contends that his mother would have testified that Bailey always enjoyed being the center of attention, which is why he told police he was at present during the November 9, 2004, murder. Petition at 4; Reply at 6-7. He submits that additional testimony from a clinical psychologist describing the phenomenon of false confessions would have bolstered the testimony of his mother.[5] Petition at 4; Reply at 7.

As Ground Two, Bailey asserts that trial counsel was ineffective for failing to interview, depose, and call Bailey's alleged co-defendant, Mr. Kirkland Lawrence, as a witness. Petition at 5-6; Reply at 5. He contends that Mr. Lawrence would have testified that he did not drive Bailey nor anyone else to the scene of the crime on November 9, 2004. He also submits that Mr. Lawrence would have testified that he told Bailey what he had heard about the crime, which could explain Bailey's knowledge of the details of the crime during his interview with the detectives. Finally, he contends that Mr. Lawrence would have testified that Bailey had a tendency to insert himself into situations in which he was never involved, further corroborating the potential testimony from Bailey's mother and an unnamed clinical psychologist, that he falsely confessed.

Bailey raised these claims as grounds one and two of his Rule 3.850 motion for postconviction relief and on appeal of the denial thereof. Resp. Ex. S, T. The state circuit court denied his claims as follows:

---

[5] In her Unsworn Declaration, Ms. Lawrence does not address whether she would have testified at trial about the shoe purchase or her son's need for attention. See Doc. 29-1.

Grounds I and II:   In Grounds I and II, the Defendant claims his attorney did not present known alibi witnesses.   In Ground I, the Defendant's mother, was allegedly prepared to testify that the Defendant could not have been at the crime scene.   In Ground II, Kirkland Lawrence, a co-defendant, was allegedly prepared to testify that he did not transport the Defendant to the crime scene. "To establish a claim of ineffective assistance of trial counsel for failing to call certain witnesses, a defendant must allege in the motion what testimony defense counsel could have elicited from [the] witnesses and how defense counsel's failure to call, interview, or present the witnesses who would have so testified prejudiced the case." Booker v. State, 969 So. 2d 186, 196 (Fla. 2007).   In addition, "as part of the requirement to show that counsel's ineffectiveness prejudiced the defendants' case, a facially sufficient postconviction motion alleging the ineffectiveness of counsel for failing to call certain witnesses must include an assertion that those witnesses would in fact have been available to testify at trial." Nelson v. State, 875 So. 2d 579, 584 (Fla. 2004).

While the Defendant has alleged the identity of the alibi witnesses, a summary of testimony, and their availability at the time of his trial, the Defendant has not demonstrated, with a reasonable probability, that the witnesses' testimony would have resulted in a different outcome.   The State's case against him was based, first, on the self-incriminating statements made by the Defendant during interrogation.   He admitted to participating in the offenses and described the event with sufficient detail to corroborate the independent findings of the investigators. Next, the physical evidence, in the form of an athletic shoe print, established the Defendant's presence at the scene of the crime.   Given the weight of self-incriminating statements and physical evidence, it is doubtful that the jury would have been swayed by the testimony of the Defendant's mother or co-defendant that he was not present during the criminal offense.   Relief is denied on Grounds I and II.   Reaves v. State, 593 So. 2d at 1151.

Resp. Ex. S at 20-21.   Without written opinion, the First DCA per curiam affirmed the denial. To the extent that the First DCA affirmed the trial court's denial on the

13

merits,[6] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

As an initial matter, the record belies Bailey's assertion that his mother and Mr. Lawrence were viable witnesses at the time of trial.[7] When the trial court directly asked Bailey during trial if there were any other witnesses Bailey wanted his counsel to call that he had not called, Bailey replied, "Not that I know of." Resp. Ex. B at 645. Furthermore, the trial court permitted the jurors to submit questions to Bailey during his trial testimony. Resp. Ex. B at 702. During this questioning, a juror asked Bailey where he was on the night of the crimes.[8] Id. Bailey answered that he was at home. Id. at 703. If Bailey had a credible alibi witness, Bailey's answer to the juror's question certainly would have prompted Bailey to ask his counsel to revisit calling his alleged alibi witness.

In addition, the state court reasonably concluded that testimony from Bailey's mother and Mr. Lawrence would not have produced a different outcome at trial, given the weight of the self-incriminating statements and physical evidence, specifically: (1) Bailey's confession to police that he participated in the crimes on November 9, 2004 (Resp. Ex. B at 438-43); (2) Bailey's presence in a car on December 2, 2004, that

---

[6] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

[7] The record reflects only that counsel communicated with Bailey's mother the day of trial regarding Bailey's decision to reject a plea offer and continue to trial. Resp. Ex. B at 8.

[8] Bailey's counsel did not ask him on direct examination where he was on the night of the crime.

contained the murder weapon (Resp. Ex. B at 352-55, 359-64, 503-04, 640-42);[9] (3)

Bailey's presence in the car on December 2, 2004, with Kirkland Lawrence, who one

of the victims, Alphonso Jimenez, identified in a surveillance video as being one of

the individuals who committed the armed robbery (Resp. Ex. B at 220-288, 313-18,

388, 500-01); and (4) the shoes worn by Bailey on December 2, 2004, matched shoe

print impressions left at the scene of the November 9 crime. (Resp. Ex. B at 620-22.)

    Bailey contends that the circuit court incorrectly analyzed the impact of his

mother's potential testimony regarding the shoes.  Reply at 8.  However, had she

testified that <u>she</u> purchased the shoes on November 14, her testimony would have

directly conflicted with Bailey's own testimony that <u>he</u> purchased the shoes on

November 14.  <u>See</u> Resp. Ex. B at 653-55.  Even if that conflict could be explained,

Bailey also testified that he owned more than one pair of Nike Air Force sneakers.

Resp. Ex. B at 703.  Thus, the jury could have concluded that even if a pair of shoes

was purchased on November 14, Bailey could have already owned a different pair

---

[9] On December 2, 2004, to the early morning hours of December 3, 2004, Bailey
was seen crawling outside of an apartment complex and lost the pair of Nike Air Force
sneakers that he was wearing as he crawled. Resp. Ex. B at 347, 374. Bailey crawled
into a car with Kirkland Lawrence and Terrance Graham, who drove injured Bailey
to the hospital. <u>Id.</u> at 348-53. After dropping Bailey off outside the emergency room,
Terrance Graham fled the hospital in the vehicle and engaged in a high-speed chase
with police. <u>Id.</u> at 353-63. Terrance Graham crashed the vehicle, and from the vehicle,
police recovered the firearms used during the November 9, 2004 crimes. <u>Id.</u> at 364-
70, 503-04. Detective Michael Padgett interviewed Bailey while he was in the
hospital, and Bailey confessed to committing the November 9, 2004, armed robbery
with Kirkland Lawrence and Terrance Graham. Resp. Ex. B at 438-44. Petitioner's
confession to police was recorded, and a copy of the recording and a redacted
transcript of the recording were presented to the jury during trial. <u>Id.</u> at 514-57.
Further, the Nike sneakers recovered on December 2, 2004, matched the shoe prints
found at the November 9, 2004, crime scene. <u>Id.</u> at 622.

that he wore on November 9 during the crime. Further, as to Mr. Lawrence's proposed testimony, Bailey testified at trial that he only knew about the November 9 crimes because Kirkland Lawrence told him about it. Resp. Ex. B at 660. However, in finding Bailey guilty, the jury clearly did not find this testimony credible.

Finally, Bailey contends that the circuit court ignored the potential impact of testimony from his mother, Kirkland Lawrence, and an unnamed psychologist that Bailey historically wanted to be the center of attention and tended to insert himself into situations where he was never involved, lending support to a theory of false confession. There is no support in the record before the state court to support Bailey's assertions.[10] Neither his mother nor Kirkland Lawrence supplied an affidavit in state postconviction proceedings. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991).

Moreover, during Bailey's testimony, he had multiple opportunities to explain why he implicated himself in the November 9 crimes. See Resp. Ex. B at 658-59, 661, 663, 667, 688-90. Essentially, he testified that he told the detectives what they

_____

[10] To determine whether the state court unreasonably applied the law or determined the facts, the Court is limited to reviewing the record before the state court on postconviction review. See Cullen v. Pinholster, 63 U.S. 170, 181 (2011). But even if the Court could consider Carmen Lawrence's Unsworn Declaration, the Court notices that the Declaration omits any assertions that she would have testified that she bought the shoes or that her son wanted to be the center of attention. See Doc. 29-1.

wanted to hear because he thought he had been promised that he would not be charged.  Id.  Never, however, did Bailey testify that he had a history of exaggerating or falsely inserting himself into situations to gain attention.  Bailey fails to show prejudice resulting from his counsel's failure to call his mother and Kirkland Lawrence as witnesses.[11]

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Bailey's claims because he had not demonstrated a reasonable probability that the witnesses' testimony would have resulted in a different outcome is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court.  See 28 U.S.C. § 2254(d).  Applying AEDPA deference, the claims in Grounds One and Two are denied.

### B. Ground Three

Bailey asserts that trial counsel was ineffective for failing to strike a biased juror, Johnny Davis.  Petition at 6-7; see also Reply at 11-12.  In both his pro se

---

[11] In addition, Bailey fails to demonstrate that counsel performed deficiently. Counsel's decision as to "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess."  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995); see also Chandler v. United States, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000).  The Court further applies a strong presumption in favor of competence.  See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014).  On this record, Bailey fails to carry his burden of showing that his counsel's representation fell outside the wide range of reasonably professional assistance.

Petition and counseled Reply, Bailey contends that trial counsel should have stricken Davis because he agreed with another juror (Vanessa Taylor, who was ultimately stricken for an unrelated reason) that Bailey would be required to prove his innocence.[12]   Petition at 6; Reply at 11-12.

In his Rule 3.850 motion for postconviction relief filed in state court, Bailey asserted only that trial counsel was ineffective for failing to strike Juror Davis because the juror wanted to hear Bailey testify.[13]   The trial court summarily denied this claim as follows:

> Ground III:  In Ground III, the Defendant claims his attorney was ineffective for failing to strike a juror from the panel based on the juror's stated desire to hear his defense to the charges.   Even if those statements could be read as showing the juror's misunderstanding of the burden of proof at trial, no prejudice has been alleged since the Defendant eventually testified on his own behalf.   The juror's supposed error, as specifically identified by the Defendant, was nullified by the defense's actions.   No deficient performance has been [shown].   Relief is denied. Reaves v. State, 593 So. 2d at 1151.

Resp. Ex. S at 21.   The First DCA per curiam affirmed the denial without written opinion.   To the extent that the First DCA affirmed the trial court's denial on the

---

[12] To the extent Bailey asserts that counsel's failure to strike Juror Davis "forced [Bailey] to testify in an effort to prove his innocence," see Petition at 6-7; Reply at 11-12, the record refutes Bailey's assertion.   Trial counsel told the jury that he had "always planned on calling Mr. Bailey to the stand to testify even as we discussed the defendant's right not to testify."   Resp. Ex. B at 750-51; see also Response at 53.

[13] Bailey also raises this claim in his pro se Petition, see Petition at 6-7, but abandons it in his counseled Reply.   See Reply at 11-12 (acknowledging that the prosecutor's follow-up questions rehabilitated Juror Davis with respect to any potential bias regarding Bailey's right not to testify); see also Resp. Ex. B at 131.

merits,[14] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

To the extent Bailey now claims that trial counsel was ineffective for failing to strike Juror Davis because he agreed that Bailey bore the burden of proving his innocence, Bailey failed to raise the specific factual foundation of this claim in state court, and it is unexhausted. See Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344-45 (11th Cir. 2004). Because he did not specifically claim that Juror Davis was biased because he was willing to shift the burden of proof, the circuit court did not have the opportunity to address the claim. He demonstrates no cause and prejudice nor a fundamental miscarriage of justice to excuse the lack of exhaustion.

Nevertheless, the circuit court recognized that Juror Davis's desire to hear Bailey's testimony could indicate that Juror Davis misunderstood the burden of proof and the presumption of innocence. Insofar as the claim may be considered exhausted, the state court's denial of Bailey's claim was neither contrary to nor an unreasonable application of Strickland, and it did not result from an unreasonable determination of the facts.

Although a juror may make initial statements during voir dire suggesting potential bias, subsequent responses may establish that the juror can be impartial, especially when combined with appropriate court instructions to the venire. See Bell v. United States, 351 F. App'x 357, 359 (11th Cir. 2009) (per curiam) (citations

---

[14] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

omitted); <u>United States v. Simmons</u>, 961 F.2d 183, 186 (11th Cir. 1992). Moreover, defense counsel's decision not to use all the peremptory strikes allotted to the defense suggests that there might have been a strategic reason for retaining the questionable juror. <u>See</u> <u>Bell</u>, 351 F. App'x at 360; <u>Simmons</u>, 961 F.2d at 186. "Assessing jurors during voir dire also requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." <u>Bell</u>, 351 F. App'x at 360.

Upon initial questioning by the prosecutor on voir dire, all jurors collectively agreed that they understood that Bailey was presumed innocent, that he had a constitutional right not to testify, that he was not required to produce any evidence of his innocence, and that the state had the burden of proving that Bailey committed the crime. Resp. Ex. B at 87-89. All jurors collectively affirmed that that they could follow the law and follow Bailey's constitutional rights if he decided not to testify or put forth evidence. <u>Id.</u>

Upon questioning by defense counsel, the jurors again collectively agreed that the understood Bailey was presumed to be innocent and that the prosecution had to prove him guilty. Resp. Ex. B at 107. The voir dire continued:

> MR. TILL: Let's talk about Meigo Bailey and him testifying in his own trial – in his own trial on his own behalf. You've heard already in a criminal case a defendant is not required to testify and if he does not testify jurors are not supposed to draw any conclusions from the fact that he did not testify. How comfortable are you with that? That's the law and that might be a law that you may have a hard time abiding by. Does anybody feel like if he's got something to say he better tell me or what's he hiding for if he doesn't testify? Does anybody feel – let me have

a show of hands and I can talk about it. Anybody feel like, hey, if he's charged with something he better convince me otherwise that he's not guilty?

PROSPECTIVE JUROR: I mean if I was on the trial –

MR. TILL: Let me get our number for the – your name, sir?

PROSPECTIVE JUROR: Davis.

MR. TILL: Jonathan Davis? Okay.

PROSPECTIVE JUROR: I mean if somebody was questioning me I would love to have a chance to tell everybody my side of the story.

MR. TILL: Okay. All right, sir. Appreciate that, Ms. Taylor?

PROSPECTIVE JUROR: I agree with Mr. Davis. If you're pleading not guilty then you should be able to plead – testify the reason why you're not guilty.

MR. TILL: Okay. But that – doesn't that put the burden – in other words, both you – he needs to tell you his side of the story. Is that sort of shifting the burden? He doesn't have to do anything. I mean he's innocent so –

PROSPECTIVE JUROR: I see what you're saying on that.

MR. TILL: I mean can you think of some reasons why maybe an uneducated man, a young person, wouldn't want to testify in front of 12 people? I mean I don't know.

PROSPECTIVE JUROR: I mean if it means his life, you know, I guess you would get over that like fast.

MR. TILL: Okay. Yeah.

PROSPECTIVE JUROR: Even if you are uneducated if you're trying to prove – I just feel like you should try to

prove that for all of us here, so that way we can give you a better sentence.

> MR. TILL:   So you feel like he should try to prove his innocence basically?

> PROSPECTIVE JUROR:   Yes.

> MR. TILL:   Okay.   And that's the same way with you, Mr. Davis?

> PROSPECTIVE JUROR:   Yeah, I guess.

Resp. Ex. B at 119-121.

Upon follow-up questioning by the prosecutor, the following transpired:

> MR. GARDNER:   I have one follow-up question for Mr. Davis.   When Mr. Till was asking you, you know, would you want to hear from him, does he need to prove his innocence, certainly everybody may think that if they were accused of a crime they would want to tell their side of the story, is that right?

> PROSPECTIVE JUROR:   Uh-huh.

> MR. GARDNER:   But do you understand that as the defendant sits here he does not have to testify?   You understand that?

> PROSPECTIVE JUROR:   I understand that.

> MR. GARDNER:   And do you think that – even though people may think, you know, outside of this courtroom I may want to hear what somebody says, do you think you can follow the law if the defendant chooses not to testify you cannot hold that against him?

> PROSPECTIVE JUROR:   Yeah.   I'm not going to.

Id. at 131.

Without objection from either party, the trial court sua sponte struck Ms. Taylor for cause because her uncle was on his deathbed and she had planned to leave that afternoon or the next morning to go to Georgia to be with him. <u>Id.</u> at 62-63, 138. Mr. Davis was seated as a juror. <u>Id.</u> at 145, 148. The defense used eleven out of twelve peremptory strikes. Resp. Ex. B at 145. At the end of jury selection, the court asked Bailey personally whether he was okay with the jurors selected.

> COURT: Mr. Bailey, you okay with these folks now?
>
> DEFENDANT: Yes, sir.
>
> COURT: You had enough time to talk to Mr. Till about all this?
>
> DEFENDANT: Not really. Was rushed into it.
>
> COURT: Step right back there in the corner and have a talk to him right now.
>
> (Mr. Till and defendant conferring.)
>
> MR. TILL: This is – we have – that's fine. Judge. We'll --
>
> COURT: All right.
>
> MR. TILL: What we announced.
>
> COURT: You had enough time to talk to him now about this, Mr. Bailey?
>
> DEFENDANT: Yes, sir.

<u>Id.</u> at 146-47.

Thus, after Juror Davis' initial responses, it was subsequently established that Juror Davis could be impartial. <u>See</u> <u>Bell</u>, 351 F. App'x at 359-60; <u>Simmons</u>, 961 F.2d

at 186.    In addition, defense counsel had one remaining peremptory strike that could have been used to strike Juror Davis, but the defense elected not to use the last strike, suggesting that a strategic reason existed for not striking Juror Davis.    Resp. Ex. B at 145.    See Bell, 351 F. App'x at 359-60; Simmons, 961 F.2d at 186.    Finally, the court directly asked Bailey if he was okay with the jury, and gave him additional time to speak with Mr. Till.    Resp. Ex. B at 146-47.    Bailey's approval of the jury suggests that counsel's presumed strategic decision not to exercise an available peremptory strike was reasonable.    See Price v. Sec'y Dep't of Corr., 558 F. App'x 871, 872-73 (11th Cir. 2014) (holding that it was not unreasonable application of clearly established federal law for the Florida courts to conclude that defendant could not argue that counsel had been ineffective for failing to strike a juror that the defendant had approved); Kelley v. State, 109 So. 3d 811, 812 (Fla. 1st DCA 2013) ("Thus, it follows that a defendant who, like Appellant, personally affirms his acceptance of the jury panel will not be heard to complain in a postconviction motion that his counsel was ineffective for allowing a biased juror to serve on his jury.").

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision is neither contrary to nor an unreasonable application of Strickland, and is not based on an unreasonable determination of the facts in light of the evidence presented to the state court.    See 28 U.S.C. § 2254(d). Ground three is denied.

**C. Ground Four**

In his Petition, Bailey asserts that trial counsel was ineffective for failing to object to inadmissible collateral crime evidence that the State claimed was inextricably intertwined.   Petition at 8-9.   Bailey does not address this ground in his counseled Reply.   Bailey exhausted this claim in state court.   Resp. Ex. S at 12-14.   The circuit court summarily denied this claim as follows:

> Ground IV:   In Ground IV, the Defendant claims his attorney was ineffective for failing to object to inadmissible evidence of previous crimes presented by the State. According to the State's Notice of Intent to Introduce Inextricably Intertwined Evidence, the Defendant was interviewed three weeks after the crimes in this case by detectives investigating a robbery and attempted robbery. (Ex. C).   The Defendant was questioned at a local hospital where he was treated for wounds received in the attempted robbery.   The Defendant asserts the facts of the robbery were unrelated to this instant case and should not have been admitted into evidence but fails to specify those objectionable portions of the record.
>
> The record reflects that no evidence of the robbery was admitted.   A pretrial agreement was reached between the State and the Defendant's counsel that the subsequent offenses were not relevant to the prosecution of the instant crimes.   (Ex. D).   In a pre-trial hearing, this Court required only "generic" references to the later offenses. (Ex. E).   Abiding by these limitations, at trial, Detective Padgett testified that he made his initial contact with the Defendant at the hospital on an "unrelated" investigation. (Ex. F).   No further elaboration on this point was discovered or brought to the Court's attention by the Defendant.   The Defendant has not demonstrated any deficient performance by his counsel.   Relief is denied. Reaves v. State, 593 So. 2d at 1151.

Resp. Ex. S at 22 (Order); see also id. at 51-55 (Ex. C, State's Notice of Intent to Introduce Inextricably Intertwined Evidence), 56 (Ex. D, Stipulation as to Defendant's Injury), 57-60 (Ex. E, transcript of pretrial hearing May 20, 2008), 62-63

(Ex. F, transcript of detective's testimony). The First DCA per curiam affirmed the denial without written opinion.

To the extent that the First DCA affirmed the trial court's denial on the merits,[15] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Bailey's claims because he had not demonstrated any deficient performance by his counsel is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground four is denied.

### D. Ground Five

Bailey asserts that trial counsel provided ineffective assistance during his cross-examination of Detective Robert Gupton by failing to object and move for a mistrial when the trial court remarked, "I've had enough. We're going to take a break." See Petition at 9-10; Reply at 12-13; see also Resp. Ex. B at 594-96. Furthermore, Bailey asserts that counsel was ineffective when he "conceded to the court's remarks and stopped further examination" of the Detective. Petition at 9; see Reply at 13.

---

[15] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Bailey exhausted this claim in state court. The circuit court summarily denied this claim as follows:

> Ground V: In this claim, the Defendant asserts that his counsel rendered ineffective assistance by failing to object when the trial judge allegedly made biased comments during the trial. This claim specifies the judge's remark, "Well, I've had enough," as evidence of a lack of impartiality. (Ex. G). After reviewing the record, the statement under question does not show actual bias by the judge and did not deprive the Defendant of a fair and impartial trial. Asay v. State, 769 So. 2 974, 979 (Fla. 2000)[.] The Defendant has not shown a deficient performance by his counsel. Relief is denied. Reaves v. State, 593 So. 2d at 1151.

Resp. Ex. S at 22. The First DCA per curiam affirmed the denial without written opinion. To the extent that the First DCA affirmed the trial court's denial on the merits,[16] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

The record reflects that trial counsel extensively cross-examined Detective Gupton. See Resp. Ex. B at 565-96. Eventually, the trial court interrupted defense counsel's cross examination as follows:

> THE COURT: Mr. Till, are you somewhere near conclusion?
>
> MR. TILL: Well, I can take a break, Judge.
>
> THE COURT: Well, I've had enough. We're going to take a break. Members of the jury, if you'll step back in the jury room. We'll be in at least a ten-minute break.

---

[16] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

(Jury excused for recess).

THE COURT:   Detective Gupton, you may stand down.

THE WITNESS:   Thank you, Your Honor.

THE COURT:   All right.   Are we ready to proceed?

MR. TILL:   Yes, Your Honor.   Based on the Court's comments about being here Saturday I have no further –

THE COURT:   It's meant more in jest than –

MR. TILL:   No. I know. I know.

THE COURT:   If you've got other questions you ask.

MR. TILL:   No. I told Detective Gupton I had no further questions.

THE COURT:   All right.   That's fine.

Resp. Ex. B at 594-96.

Bailey cannot show deficient performance by counsel because trial counsel had no grounds to object to the trial court's comment, "I've had enough."   In context, it is clear from the record that the trial court simply was ready for a short break in the proceedings, was looking for an appropriate time to take a break, and was exercising its authority and discretion in ordering a recess.   When given the opportunity to continue cross-examination after the recess, trial counsel strategically chose not to resume questioning.   Not only will the Court refrain from second-guessing counsel's strategic decisions, but Bailey fails to suggest any other questions that counsel should have asked Detective Gupton on cross-examination.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Bailey's claims because he had not shown deficient performance by his counsel is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground five is denied.

## E. Ground Six (A)

Bailey asserts that appellate counsel was ineffective for failing to raise and argue on appeal the claims surrounding Bailey's confession and his <u>Miranda</u>[17] rights violation that trial counsel had previously raised in the lower court. Petition at 10-13; Reply at 13-21. Specifically, in Ground Six (A), Bailey asserts that appellate counsel failed to challenge on direct appeal the voluntariness of Bailey's statements to Detective Michael Padgett following the Detective Padgett's promise to not "charge him up."[18] Petition at 10-11; Reply at 13-14.

Bailey exhausted this claim by raising it in his petition alleging ineffective assistance of appellate counsel. Resp. Ex. M. The First DCA denied his petition per curiam and on the merits but without a written opinion. Resp. Ex. N. The First DCA's decision is entitled to AEDPA deference.

---

[17] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[18] Near the end of Ground Six in his Petition, Bailey asserts that "[a]lternatively Petitioner would submit that trial counsel was ineffective for failing to adequately argue the above during the suppression hearing." Petition at 13. This reference is insufficient to raise an independent claim of ineffective assistance of trial counsel.

Respondents contend that the record of Bailey's interview reflects that, in context, Detective Padgett did not promise Bailey that he would not charge him. Response at 79-82; see Resp. Ex. M, Attachment A. Respondents also assert that the issue would have been meritless, in which case appellate counsel did not perform deficiently. Response at 81-82.

The Court gives considerable deference to the appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. The danger of raising weaker issues in a "kitchen-sink" approach is that it detracts from the attention an appellate court can devote to the stronger issues and reduces appellate counsel's credibility before the court. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also McBride v. Sharpe, 25 F.3d 962, 973 (11th Cir. 1994). Thus, effective appellate attorneys "will weed out weaker arguments, even though they may have merit." Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009); see also Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). Appellate counsel's failure to raise a meritless or weaker issue does not constitute deficient performance which falls measurably outside the range of constitutionally acceptable performance. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); Owen, 568 F.3d at 915. Prejudice results only if "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1264-65.

On direct appeal, appellate counsel raised one issue:

> The trial court reversibly erred in failing to suppress Appellant's statement made December 7, 2004, since

> Appellant's invocation of his right to remain silent was not
> scrupulously honored contrary to the Fifth and Fourteenth
> Amendments to the United States Constitution and Article
> I, section 9 of the Florida Constitution.

Resp. Ex. C at 9.   The state responded, and Bailey replied.   Resp. Exs. D, E.

The First DCA issued a fourteen-page, signed, written opinion.   Resp. Ex. F; Bailey v. State, 31 So. 3d 809 (Fla. 1st DCA 2009).   In the opinion, the First DCA concluded that the case could not be resolved merely by analogy to precedent.   Resp. Ex. F at 13.   The appellate court noted that it had "the relatively unique opportunity to listen to the statement as it was uttered at the time of the interview" instead of considering only the cold record.   Id.   The court then explained: "If we only had the cold record to consider here, we might be persuaded that [precedent] requires reversal."   Id. at 13-14.   However, after listening to the pertinent portions of the recording, the appellate court "underst[ood] why the trial court reached the result that it did."   Id.   The First DCA affirmed because "we cannot say that the trial court erred in concluding that Appellant's words were insufficient to trump his prior waiver of his right to remain silent."   Id.   Given this disposition and the considered reasoning contained in the opinion, it is clear that the issue raised by appellate counsel provided a strong case for reversal, even though it was ultimately rejected.

In contrast, the issue Bailey contends should have been raised would have been weak, if not meritless.   Bailey contends that appellate counsel should have raised the voluntariness of his statements to Detective Padgett following the Detective's statement that he was not trying to "charge him up."   Trial counsel raised this issue in the motion to suppress and addendum thereto.   Resp. Ex. M at Attachment B.

The trial court held a hearing, at which the Detective testified that he never promised Bailey that he would not be charged if he cooperated. Resp. Ex. A at 9-10. He also testified that the detectives were investigating several robberies in addition to the murder, and when he said, "We're not trying to charge you up, Meigo," he meant:

> "We don't want to charge you with every robbery. You tell us what you did and what you were involved in, and we'll place the charges appropriately. We don't want to put your name in everything."

Id. at 427. After considering the testimony and exhibits, as well as citations of authority, the trial court orally denied the motion to suppress as follows:

> I think that what the officers did was appropriate under the circumstances. There was nothing to indicate, in my mind, that there is anything less than credible about their testimony; in fact, Mr. Bailey's own testimony indicated to me that more likely than not he knew exactly what was going on during the course of the interviews that he had with the officers.
>
> And, accordingly, it may be something that you want to argue with the jury, but as far as I'm concerned, I just can't see that there is a legal basis to grant the motion to suppress. And, accordingly, it is denied.

Id. at 455-56. In addition, at trial, Detective Padgett explained three times on cross-examination what he meant. He testified that Bailey accused him of trying to charge him up, and that Detective Padgett explained to him that "we were trying to find out who did what. We just didn't want to wholesale charge everybody with a murder or robbery or whatever. We were trying to find out who exactly did what and charge them appropriately." Resp. Ex. B at 448-49. He also testified that "what I meant by that is exactly what you just read. We're not going to just charge him up. We're

looking to get at the truth and take what he says and put with the evidence and what other people say and make the appropriate charges." Id. at 449. Finally, when asked again for his opinion of the meaning of "we're not here to charge you up," Detective Padgett testified, "As I explained already when I said that and I went into an explanation after that is that we're looking based on what he told us, based on the evidence to place the charges on the right people, be they whatever. We're not just looking to wholesale charge Mr. Bailey in this case." Resp. Ex. B at 453-54; see also id. at 462-63.

Given Detective Padgett's testimony explaining what he meant, as well as the trial court's credibility findings at the suppression hearing and the jury's role in determining credibility at trial, the voluntariness of Bailey's subsequent statements was a considerably weaker appellate issue than the one raised by appellate counsel on direct appeal. Applying double deference to the state court's evaluation of appellate counsel's performance, the Court concludes that the First DCA's denial of Bailey's petition for habeas corpus was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court.[19] See 28 U.S.C. § 2254(d). Ground Six (A) is denied.

**F. Grounds Six (B) – (H)**

---

[19] Also, Bailey cannot show a reasonable probability that the outcome of the appeal would have been different had appellate counsel raised the issue.

Bailey asserts that his appellate counsel provided constitutionally ineffective assistance. Petition at 10-13; Reply at 13-21. Acknowledging that he failed to exhaust these claims in state court, he seeks to overcome the procedural default by relying on Martinez v. Ryan, 566 U.S. 1 (2012), and Trevino v. Thaler, 133 S. Ct. 1911 (2013). See Petition at 12, 19-20; Reply at 14-16. However, the equitable rule in Martinez/Trevino does not extend to claims of ineffective assistance of appellate counsel. Davila v. Davis, 137 S. Ct. 2058, 2067 (2017); see also Lambrix v. Sec'y Fla. Dep't of Corr., 756 F.3d 1246, 1260 (11th Cir. 2014); Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013) (per curiam)). Accordingly, Bailey may not rely on Martinez/Trevino to excuse the procedural default of his claims of ineffective assistance of appellate counsel. Grounds Six (B) through (H) are unexhausted and procedurally defaulted. Bailey has not demonstrated cause excusing the default or actual prejudice resulting from the procedural bar, and he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Thus, Bailey is not entitled to relief on these claims.

### G. Ground Seven

Bailey asserts that he was denied due process and equal protection under the Fifth and Fourteenth Amendments where the First DCA denied his direct appeal. Petition at 13-14; Reply at 5. Specifically, Bailey contends that the First DCA erred by failing to conduct a thorough search of case law before concluding that "[b]ecause there is no case that is more closely analogous to Petitioner's, wherefore this Court was left to draw its own conclusion regarding the specific statement Petitioner

uttered." Petition at 13. Bailey contends that had the First DCA conducted proper legal research, it would have discovered Arnold v. Runnel, 421 F.3d 859 (9th Cir. 2005), Ochacher v. State, 987 So. 2d 1241 (Fla. 4th DCA 2008), and Connecticut v. Barrett, 107 S. Ct. 828 (1987). Petition at 13. As such, Bailey asserts that the First DCA denied him equal protection and due process. Id. He also contends that the First DCA failed to protect his constitutional rights by unreasonably applying United States Supreme Court law to the Fourth Amendment issues in his case. Reply at 21.

Respondents contend that Bailey fails to raise a federal claim. See Response at 16, 84. Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citations omitted). As such, federal courts may not review claims based exclusively on state law issues even if the claims are "couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quotation omitted). The Court agrees that although Bailey couches his claim in terms of violations of equal protection and due process, he fails to raise a constitutional claim cognizable in federal habeas corpus. See Duncan, 513 U.S. at 364; Branan, 861 F.2d at 1507.

Further, to the extent Ground Seven can be liberally construed as a federal constitutional challenge, this claim is unexhausted because Bailey did not present the federal nature of this claim in state court. Bailey alleges that he raised this claim in his petition for writ of habeas corpus alleging ineffective assistance of appellate counsel filed with the First DCA. See Petition at 14. However, it does not appear that

Bailey ever raised such a claim. Resp. Ex. M. Thus, this claim is unexhausted and procedurally defaulted, and Bailey has not demonstrated cause excusing the default or actual prejudice resulting from the procedural bar, and he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. He is not entitled to federal habeas relief on this claim.

### H. Grounds Eight through Twelve

Bailey acknowledges that he did not exhaust his state court remedies on Grounds Eight through Twelve.   Petition at 15-20.   He contends that his failure to exhaust these claims should be excused under Martinez and Trevino because he was not represented by counsel during his initial postconviction proceedings.   Petition at 19.   According to Bailey, these claims would not have been procedurally defaulted had he been represented by counsel in his initial review, state postconviction proceedings.   Petition at 20; see also Reply at 14-15.

Respondents contend that Bailey has failed to demonstrate that these defaulted claims are substantial, thus, they argue that Bailey cannot rely on Martinez to overcome the procedural defaults. See generally Supp. Response.

Under Martinez, Bailey must demonstrate more than the general assertion that the trial court did not appoint counsel in the initial-review collateral proceeding. 566 U.S. at 14. Petitioner must "also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. (citations omitted); see also Lambrix v. Sec'y Fla. Dept. of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017).

Conversely, his claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." Id. at 16. For the reasons that follow, the Court finds that even if Bailey demonstrates that his lack of postconviction counsel caused his procedural default, he cannot demonstrate that his underlying ineffective-assistance-of-counsel claims are substantial in order to establish cause and prejudice under Martinez.

**i. Grounds Eight, Nine, and Ten**

In Grounds Eight, Nine, and Ten, Bailey challenges trial counsel's conduct during Bailey's trial testimony. See Petition at 15-17. Bailey asserts in Ground Ten that trial counsel was ineffective for introducing damaging, inadmissible evidence about his involvement in the collateral December 2 robberies and subsequent arrest. Petition at 16-17; Reply at 6, 22-23. Bailey contends that his claim is supported by the trial judge's comments about letting "members of the herd" through, which counsel did not understand at the time. Petition at 16-17; Reply at 22-23. According to Bailey, the trial court tried to inform trial counsel that his questioning of Bailey may open the door to irrelevant collateral evidence, but trial counsel failed to heed the trial court's warning.

Bailey asserts in Ground Eight that trial counsel was further ineffective by failing to familiarize himself with the facts surrounding Bailey's case and in Ground Nine by failing to object to intimidation tactics employed by the trial court. Petition at 15-16; Reply at 6, 22. Essentially, he contends that if counsel had been more familiar with Detective Padgett's deposition testimony, counsel would have known

that the state lacked evidence of Bailey's alleged prior inconsistent statement that he knew the guns found on December 2 were the same guns used during the November 9 murder. It follows that Bailey would not have been intimidated by the risk of opening the door to admission of collateral crime evidence, and therefore, Bailey would not have changed his testimony on direct examination, which subjected him to additional impeachment on cross-examination. Petition at 15-16. In sum, Bailey submits that "[i]n effect, trial counsel's lack of preparation, combined with his concession and failure to object to the trial court's intimidation that forced Petitioner to change his testimony, was tantamount to a concession of critical facts that secured Petitioner's conviction." Reply at 22.

To add context to Bailey's claims, the Court will summarize the events at trial that give rise to his claims. To minimize the admission of any evidence of the collateral December 2 crimes, Bailey and the state agreed to a Stipulation as to Defendant's Injury. Resp. Ex. A at 278; see also Resp. Ex. B at 340. In accordance with the stipulation, the state limited Detective Padgett's testimony at trial to events that occurred after Detective Padgett interviewed Bailey in the hospital on December 6 on "unrelated matters." Resp. Ex. B at 432, 438.

On direct examination, defense counsel asked Bailey whether he knew that there were firearms in the front of the automobile on December 2, the night he was hurt. Resp. Ex. B at 652. Bailey testified that he did not. Id. The prosecutor requested a sidebar, at which the following transpired:

> THE COURT: How many members of the herd that you plan to let through, Mr. Till?

MR. TILL:   What, Judge?

THE COURT:   Go ahead.

MR. TILL:   You lost me on that.

MR. GARDNER:   I think we have a situation here, Your Honor.   Mr. Bailey said on the stand that he had no idea those guns were in the car when, in fact, when Detective Padgett was interviewing him about the robbery that he committed with Mr. Rodriguez and the attempted robbery of Mr. Williams where he had a gunshot wound he told them he had a .38, so he admitted he had the .38 all night long because they directly confronted him about that.

I think Mr. Till has opened the door at least for me to ask him:  Do you remember telling Detective Padgett that you had that .38 that night all night?

Also we redacted a portion where I think it was Detective Meacham asked him if those were the same guns that they used during the murder that they got caught with that night and he said, yes.

MR. TILL:   I can't hear you.

MR. GARDNER:   I mean –

MR. TILL:   When did Padgett – okay.   Did Padgett – he didn't testify to that.

MR. GARDNER:   No.   But we were keeping that out, but your guy just said he didn't know that .38 was in the car or the .45 or the .380 when he told –

(Sidebar discussion concluded.)

THE COURT:   Members of the jury, step back in the jury room for a few moments, please.

(Jury out at 5:08 p.m..)

> THE COURT:   My comment was just how many members
> of the herd did you want to walk through the door, the barn
> door? I will let you make a proffer, Mr. Gardner.

Resp. Ex. B at 676-78.   On proffer examination by the prosecutor, Bailey could not recall whether he had previously told Detective Padgett that Kirkland had the .45 and Graham had the .380 on the night of December 2 when they robbed Mr. Rodriguez and Bailey was ultimately shot and taken to the hospital.   Id. at 679-81.   After refreshing Bailey's recollection with an "unredacted" but unidentified "transcript," the prosecutor asked him whether he told the detectives that he knew the .38 was in the car that night.   Id. at 681.   He responded, "I didn't say I knew it was in the car. I didn't say – no.   I didn't say anything like that."   Id.   Following the proffer examination, the trial court agreed to allow the prosecutor to impeach Bailey intrinsically by questioning him and extrinsically by calling Detective Padgett to testify about Bailey's prior inconsistent statement.   Id. at 682-83.   During this discussion, Bailey sua sponte interjected:

> THE DEFENDANT:   Hey, I got a – you said I said I had
> knowledge of both guns used in a whatever that I knew was
> in the car or something like that.
>
> MR. GARDNER:   Uh-huh.
>
> THE DEFENDANT:    I said that?
>
> MR. GARDNER:   That's what the detective says you said.
>
> THE DEFENDANT:   Can you prove I said that?
>
> THE COURT:   He's going to, I'm sure.
>
> THE DEFENDANT:   How?

THE COURT: He's going to call the detective back and the jury is going to get to hear about it.

THE DEFENDANT: That's speculation, ain't it?

THE COURT: The [risk] to you is that they accidentally also hear about the fact that you were in custody and shot and involved in a robbery. Oh, well. You may want to rethink what you said today, Mr. Till. Do you want a moment to talk to him about whether or not he wants to admit this?

MR. TILL: Yeah. I wish I could, Judge, yeah. I mean there's a transcript right here.

THE COURT: That's my point. It's a transcript of what he told the detectives.

MR. TILL: Right.

THE COURT: I'm not going to let him hide behind a redaction.

MR. GARDNER: Well, no, Your Honor, actually there's no – there's no transcript of the – you know, the conversations on December 6th.

THE COURT: I'm sorry?

MR. TILL: Oh, that's right.

MR. GARDNER: It is in their police reports where they started talking about the guns and he told them who had which ones and what they did with them, so – I mean but I can limit it just to did you talk to them about –

THE COURT: In any event –

MR. TILL: I can talk to him about that. Is that okay, Judge?

THE COURT: I have no problems with that.

MR. TILL: Okay.

MR. GARDNER:   Sure.

(Mr. Till and defendant conferring.)

Resp. Ex. B at 683-686.   When Mr. Till then asked Bailey if he wanted to reconsider, Bailey asked if he could recant what he said.   Id.   After the jury returned, Bailey changed his testimony to acknowledging that he knew there were firearms in the car on December 2.   Id. at 687-88.

Here, Bailey's claims in Grounds Eight, Nine, and Ten are insubstantial because they lack both factual support and merit. All three claims are premised upon Bailey's allegation that he never made a pretrial statement to Detective Padgett that he knew there were firearms in the vehicle on December 2 and that the firearms found on December 2 were the same ones used in the November 9 crimes. However, a review of Detective Padgett's pretrial deposition reveals that Detective Padgett interviewed Bailey while Bailey was in the hospital being treated for the December 2 gunshot wound and during that interview, Bailey admitted that he, Terrance Graham, and Kirkland Lawrence all had firearms on the night of the December 2 robbery at Art Museum Drive. Resp. Ex. A at 78. From that admission, it logically follows that Bailey would have known that guns were in the vehicle on December 2 before he was dropped off at the hospital. Detective Padgett's deposition further indicates that Bailey admitted that the guns found on December 2 were the same guns used during the November 9 robbery. Id. at 80. Indeed, the transcript of Detective Gupton and Detective Padgett's December 7 interview of Bailey shows that Bailey made a pretrial statement admitting that the only guns he and his co-

defendants ever had in their possession were the guns used during the November 9 robbery.[20] Resp. Ex. A at 64.

Further, by recanting his trial testimony, Bailey avoided the risk of admission of further evidence regarding the December 2 robbery.   Rather than risk admission of further damaging evidence of uncharged criminal activity, Bailey and his counsel chose to retract his testimony by rehabilitating him on direct examination, although he was still subject to cross-examination.   Counsel's decision not to object to the trial court's comments was objectively reasonable.   Having opened the door, counsel made strategic decisions on how to close it in a time-sensitive situation that this Court is loath to second-guess.[21]   See Chandler, 218 F.3d at 1314 (en banc) (federal courts "must avoid second-guessing counsel's performance"); Waters, 46 F.3d 1522 ("[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").   Because Bailey's allegations that trial counsel performed deficiently lack factual support and are meritless, Bailey's Strickland claims are unsubstantial, and Martinez does not apply to excuse his default. Thus, Bailey is not entitled to relief on these claims.

**ii. Ground Eleven**

---

[20]  The redacted version of this transcript was given to the jury when the State presented the recording of this interview during trial. See Resp. Ex. B at 514-57

[21]  The Court remains concerned whether Bailey's counsel performed deficiently when, in disregard of the stipulation, he unnecessarily questioned Bailey about his knowledge of whether the gun was in the car, leading to an unnecessary recantation and opening his client up to impeachment and use of his recantation by the prosecutor in closing argument. See Doc. 30. While such conduct is disconcerting, the procedural default and the overall record evidence support the Court's denial of these claims.

Bailey asserts that trial counsel was ineffective for failing to object to the State's improper closing argument. Petition at 17-18; Reply at 6, 23-24. In his pro se Petition, Bailey generally suggests that the prosecutor "cast [his] own opinion of Petitioner's guilt to the jury, or [played] on the jury's emotion in order to obtain a favorable verdict." Petition at 17. He contends that the prosecutor's closing argument was "intended to be an unfair display of glib oratory skills that impugn counsel's defense and bolstered a witness's testimony." Id. Respondents aver that Bailey's claim is conclusory and otherwise lacks factual support or merit to overcome the procedural default pursuant to Martinez. See Supp. Response at 20-25.

The Court agrees with Respondents that Bailey's claim, as presented in the Petition, is too general and conclusory to support a claim for federal habeas relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim); see also Response at 107-08.

In his counseled Reply, Bailey focuses his claim on several statements made during the prosecutor's closing argument. He asserts that "the State improperly suggested to the jury that the burden of proof had shifted to the Petitioner, stating that Petitioner had subpoena power and effectively arguing that Petitioner could have subpoenaed witnesses to prove his innocence." Reply at 23 (citing Resp. Ex. B at 785). Also, he contends that trial counsel "failed to object to the State's improper reference to identification at the crime scene and firearms when there was no such evidence presented." Id. at 23-24 (citing Resp. Ex. B at 733, 790). Finally, he

asserts that trial counsel failed "to object to the State's closing argument that referenced a photospread identification of co-defendant Kirkland Lawrence that the trial court had not permitted into evidence." Id. at 24 (citing Resp. Ex. B at 597, 699, 732-33). Bailey contends that the prosecutor's references in closing argument were unreasonable and that counsel's ineffectiveness in failing to object to them, combined with other circumstances of ineffective trial counsel, justify habeas relief.[22] Id.

Arguments raised for the first time in a reply brief are not properly before a reviewing court. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) (citations omitted). But even considering the specific claims in the counseled Reply, however, Bailey cannot demonstrate deficient performance. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689.

The court in Dailey v. Sec'y Fla. Dept. of Corr., No. 8:07-CV-1897-T-27MAP, 2012 WL 1069224, at *6 (M.D. Fla. Mar. 29, 2012) imparted that,

> Under Florida law, trial counsel is permitted wide latitude in arguing to a jury. Breedlove v. State, 413 So.2d 1 (Fla. 1982). Federal law likewise permits wide latitude in this regard. To prevail under federal law, a petitioner must show that the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168 (1986). See also Cargill v. Turpin, 120 F.3d 1366 (11th Cir. 1997) (improper remarks will compel habeas corpus relief only if

---

[22] Bailey did not expand on this claim in his Supplemental Reply. See generally Supp. Reply.

they are so egregious as to render the proceedings fundamentally unfair). Upon consideration, it can be reasonably concluded that none of the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974); Cargill v. Turpin, 120 F.3d 1366, 1379 (11th Cir. 1997) (if reviewing court is confident that, absent improper prosecutorial remarks, the jury's decision would have been no different, proceeding cannot be said to have been fundamentally unfair, and habeas relief is not warranted).

Upon review of the state court record, this Court finds the prosecutor's comments regarding the burden of proof, Bailey's knowledge of the crimes, and evidence identifying Kirkland Lawrence as the co-defendant, in context, were merely a recitation of and response to the evidence admitted at trial and Bailey's defense at trial. Resp. Ex. B at 733, 785, 790.  Further, any harmful effect from any allegedly improper statement was diminished by the trial court's instruction to the jury that the attorneys' statements during closing arguments are not evidence, and thus, should not be considered as such.   Resp. Ex. B at 721-22.

Bailey cannot demonstrate that his counsel's failure to object to the prosecutor's closing argument was objectively unreasonable and cannot overcome the presumption that his counsel's actions were strategic.   In addition, Bailey cannot show prejudice resulting from his counsel's failure to object.   Because the claim in Ground Eleven is unsubstantial and lacks merit, Bailey cannot rely on Martinez to excuse the procedural default of this claim.[23] Thus, he is not entitled to relief on this claim.

_____

[23] During closing the prosecutor stated "[a]re there other witnesses out there

### iii. Ground Twelve

Bailey asserts that trial counsel was ineffective for failing to object and/or strike a biased jury panel in violation of his Fifth, Sixth and Fourteenth Amendment rights. Petition at 18-19; Reply at 6. He contends that trial counsel should have moved to strike the jury panel when a prospective juror or jurors answered "yes" to the question posed by his counsel, "do you think that Meigo Bailey must have done something wrong or he wouldn't have been charged with these serious crimes?"[24] Petition at 18; see also Resp. Ex. B at 118-19.

Respondents contend that defense counsel rehabilitated the jury panel by following up with clarification and further questioning, to which the jurors collectively acknowledged that Bailey was, at this point, not guilty because no evidence had been presented yet. Response at 111-13; see also Resp. Ex. B at 118-19. Respondents further contend that Bailey not only acquiesced in but affirmatively approved counsel's decision to select the jurors who were seated. Response at 113-14; Resp. Ex. B at 146-47.

The Court agrees that defense counsel's clarifying questions rehabilitated the jury panel and that Bailey cannot demonstrate that any of the jurors who were seated were any of the panel members who initially indicated that Bailey might have done

---

that maybe could have testified? The state has got the burden of proof in this case. The defendant has absolutely no burden but you know what the defense does have, subpoena power just like the state." Resp. B at 785. While this argument may have been an impermissible "backdoor" attempt at improperly shifting the burden of proof, the Court cannot disregard the procedural default of this Ground or the record evidence showing Bailey was not prejudiced by this isolated statement.

[24] In his counseled Reply, Bailey does not address ground twelve.

something wrong. In addition, the reasonableness of counsel's actions may be substantially influenced by the client's own actions, and Bailey's approval of the jury indicates that counsel's presumed strategic decision not to move to strike the jury panel was reasonable. See Price, 558 F. App'x at 872-73; Kelley, 109 So. 3d at 812. Bailey cannot show that counsel was ineffective for failing to move to strike the jury panel. Because the claim in ground twelve is unsubstantial and lacks merit, Bailey cannot rely on Martinez to excuse the procedural default of this claim.[25] Thus, he is not entitled to relief on this claim.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.      Bailey's Petition Under § 2254 for Writ of Habeas Corpus (Doc. 12) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Bailey appeals the denial of the Petition, the Court denies a certificate of appealability.[26] Because this Court has determined that a certificate of

---

[25] In his Petition, Bailey references a ground thirteen. Petition at 20. However, neither Respondents nor the Court has located ground thirteen, and in his counseled Reply, Bailey does not address any ground thirteen.

[26] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

appealability is not warranted, the **Clerk of the Court** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

      **DONE AND ORDERED** in Jacksonville, Florida this 4th day of April, 2019.


TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Counsel of record

---

Here, after consideration of the record as a whole, a certificate of appealability is not warranted.